IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 21-cv-6715 |
| v. | ) |
| | ) Honorable Beth W. Jantz |
| MARTIN J. O'MALLEY, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

    This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Mark T.'s application for Disability Insurance Benefits ("DIB"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Motion for Summary Judgment [dkt. 15] is granted and the Commissioner's Motion for Summary Judgement [dkt. 17] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

## **BACKGROUND**

### I. Procedural History

On January 19, 2018, Plaintiff completed his application for DIB, alleging disability due to back, shoulder, and knee injuries since October 12, 2013. R. 217-220, 255-61. The claim was denied initially on March 19, 2018, and upon reconsideration on November 1, 2018. R. 78-142. Plaintiff subsequently amended his alleged onset date to March 4, 2016. R. 244-45. A hearing before an Administrative Law Judge ("ALJ") was held on June 13, 2019. R. 33-77. Plaintiff's claim was denied by the ALJ on July 25, 2019. R. 12-32. The Appeals Council denied Plaintiff's request for review on May 13, 2020. R. 1-6. On February 22, 2021, this Court granted an agreed motion for reversal with remand and vacated and remanded the Commissioner's decision for further administrative proceedings. R. 1589-93. The Appeals Council remanded the case to the ALJ on April 7, 2021. R. 1594-1600. A second hearing before the ALJ was held on July 29, 2021. R. 1524-61. Plaintiff's claim was denied by the ALJ on August 20, 2021. R. 1499-1523. Plaintiff did not file written exceptions to the decision and the Appeals Council did not review the ALJ's decision, making it the final decision of the Commissioner. [Dkt. 1 at ¶¶ 7-8].

### II. The ALJ's Decision

The ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017, making the relevant period from March 4, 2016 (the amended alleged onset date) to December 31, 2017. R. 1504. The ALJ then analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. R. 1504-16. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity ("SGA") during the relevant period. R. 1505. At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity; degenerative disc disease of the lumbar and cervical spine; chronic obstructive pulmonary disease; and right shoulder rotator cuff tendinopathy. R. 1505-08. The ALJ also concluded that Plaintiff had the following non-severe impairments: right ankle injury; hypertension; diabetes; and recurrent renal stones. *Id.* Finally, she concluded that Plaintiff's cognitive/memory impairment was not a medically determinable impairment. *Id.* The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 1508. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that the claimant is limited to: no more than frequently climbing ramps or stairs; no more than frequently balancing, stooping, crouching, kneeling, or crawling; never climbing ladders, ropes, or scaffolds; and no more than frequently reaching overhead with the right upper extremity. R. 1508-14. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 1514-15. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 1515-16. The ALJ then concluded that Plaintiff was not disabled under the Social Security Act. R. 1516.

# **DISCUSSION**

## I. Judicial Review

Under the Social Security Act, a person is disabled if they are unable "to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any SGA during the period for which they claim disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council did not review the ALJ's decision, it became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**II.     Analysis**

Among other arguments, Plaintiff argues that the Commissioner's decision should be reversed because substantial evidence did not support the ALJ's assessment of Plaintiff's RFC, particularly in regards to accommodating his shoulder impairment. [Dkt. 16 at 8-10]. After a review of the record and the briefs [dkt. 16; dkt. 17; dkt. 18] submitted by the Parties, the Court agrees that the ALJ did not sufficiently support this aspect of the RFC determination. Because this error alone warrants remand, the Court does not reach Plaintiff's additional arguments.[3]

**A.  Legal Principles**

"The RFC is an assessment of what work-related activities an individual can do, despite [their] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must point to how specific medical and nonmedical evidence supports each conclusion in the RFC. *Jarnutowski*, 48 F.4th at 774. "The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate [their] analysis so that we can follow [their] reasoning." *Id.* (citing *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015)). A failure to sufficiently support the RFC determination is a basis for remand. *See id.*

**B.  The ALJ's RFC Determination**

The ALJ determined that Plaintiff had the RFC to perform light work with further physical limitations. R. 1508-14. Relevant to the Court's analysis, Plaintiff was limited to light work except that he could "no more than frequently reach[] overhead with the right upper extremity." R. 1508.

In assessing Plaintiff's RFC, the ALJ first briefly summarized Plaintiff's disability report and hearing testimony. R. 1509. She specifically noted that Plaintiff alleged shoulder pain and numbness, along with back pain during the relevant period. *Id.* The ALJ then set forth her conclusion that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the evidence. *Id.* Perhaps in an attempt to explain her reasoning for making this conclusion, the ALJ stated, "The evidence does not support a finding of disability. The claimant has been treated conservatively and has been found to have essentially normal neurological functioning, with minimal deficits on physical exam and a normal gait." *Id.*

The ALJ next summarized the medical records. R. 1509-1513. The cited medical records[4] showed that Plaintiff presented to medical providers with low back pain and right shoulder pain on multiple occasions, prior to and during the relevant period. R. 1509-11 (citing r. 373, 379, 412, 567, 1096-98, 1123, 1197). At times, Plaintiff reported he was doing okay, that his pain was stable, and that his pain came and went. *Id.* (citing r. 379, 412, 485, 1144). Plaintiff had multiple normal

---

[3] This includes Plaintiff's argument that substantial evidence did not support the ALJ's assessment of the RFC as to his cane usage. [Dkt. 16 at 10-11].

[4] The Court will only summarize some of the cited medical records to provide an overview of those records that may be related to Plaintiff's shoulder impairment.

4

physical and neurological exams that showed no musculoskeletal deficits. *Id.* (citing r. 375, 485-87, 613, 619, 629, 637, 691, 1096-98, 1197, 1465). Plaintiff exhibited a limited range of motion in his shoulder. R. 1510 (citing r. 1198).

Right before the alleged onset date, an X-ray of Plaintiff's spine showed no measurable scoliosis and a mild wedging deformity. R. 1509 (citing r. 386). An X-ray of his right shoulder was normal at this time. *Id.* (citing r. 388). But an MRI shortly after Plaintiff's alleged onset date showed a cyst on his shoulder, which indicated a cartilage tear; his rotator cuff and bicep tendon were intact. R. 1510 (citing r. 979).

In terms of treatment, Plaintiff was recommended exercise. *Id.* (citing r. 472). He was also referred to an orthopedic specialist, though he never saw one during the relevant time period. R. 1509 (citing r. 379, 392, 412, 1113, 1123). Plaintiff participated in multiple sessions of physical therapy with little progress. R. 1510-11 (citing r. 522, 1437). At times, he also took pain medication. R. 1510 (citing r. 499, 519).

The ALJ also looked at evidence from after the relevant period, and concluded it was consistent with the RFC because although there were allegations of physical limitations (including the use of a cane), Plaintiff participated in various activities of daily living, had no musculoskeletal deficits, was not in acute distress, and denied any acute injuries. R. 1511 (citing r. 274-86, 299-327). The cited records showed that an MRI of Plaintiff's spine done shortly after the relevant period displayed mild to severe degenerative changes. *Id.* (citing r. 1281-82). An MRI of his shoulder done at the same time showed mild degenerative changes. *Id.* (citing r. 879). Plaintiff received an injection into his shoulder and back, reported worsened shoulder pain, and again participated in physical therapy. *Id.* (citing r. 784, 794, 863, 1018). He continued to report pain but had normal findings at exams. *Id.* (citing r. 967, 995, 1062). Approximately five months after the relevant period, another MRI showed mild to moderate spinal degeneration. *Id.* (citing r. 1270-71).

Regarding Plaintiff's shoulder impairment, the ALJ reasoned that with regard to the RFC, "The exertional level and reaching limitations accommodate his shoulder impairment." R. 1512. She did not, however, further address **how or why** Plaintiff's shoulder impairment was accommodated for by this exertional level and reaching limitation,[5] but generally stated that Plaintiff's alleged physical limitations were not supported by the record. R. 1512. The ALJ reasoned that Plaintiff could perform work in line with the RFC because he: often had unremarkable exams without musculoskeletal deficits; was neurologically intact with normal strength, sensation and gait; had some imaging done which revealed only mild deficits; reported doing okay to providers and that his symptoms were improving with treatment; denied back and

---

[5] The ALJ did reference Plaintiff's shoulder impairment again at the end of the RFC discussion, but only repeated what was already said. The ALJ stated at that point, "This [light exertion] limitation accommodates his complaints of back and shoulder pain…The right shoulder impairment is further accommodated with the limitation to frequent reaching overhead. No further limitations are supported." R. 1514. Again, the ALJ did not explain how or why a limitation to light exertion and "frequent reaching overhead" sufficiently accommodated his shoulder impairment and pain.

5

shoulder pain at times; failed to see an orthopedic specialist as recommended without an adequate explanation for this failure; had conservative treatment; and was recommended exercise by his providers. R. 1512-14. In discussing her reasoning for the RFC, the ALJ only cited to records for one of these reasons - that Plaintiff did not provide an adequate explanation regarding his failure to see an orthopedic specialist. *Id.* The ALJ also assessed opinion evidence but found it all to be unpersuasive. R. 1513-14.

### C. The ALJ failed to provide substantial evidence to support the RFC.

The essential question is whether the ALJ's RFC determination was supported by substantial evidence so that there was a logical bridge between the evidence and the RFC. *See Sandra S. v. Kijakazi*, No. 19 CV 8421, 2022 WL 4291049, at *6 (N.D. Ill. Sept. 16, 2022). The Court finds that the RFC was not adequately supported, because the ALJ gave no explanation of how or why Plaintiff's shoulder impairment was sufficiently accommodated by the reaching and exertional limitations, or what she relied on to come to those limitations. *See Lakisha R. v. Kijakazi*, No. 20 C 7574, 2023 WL 2374974, at *4 (N.D. Ill. Mar. 6, 2023) ("But how the ALJ arrived at these limitations were never explained in his decision."). The ALJ was required to connect evidence to the reaching and exertional limitations she imposed in the RFC. *See Jarnutowski*, 48 F.4th at 774 ("The regulation also requires an ALJ to describe how the evidence supports each conclusion about a strength function, citing specific medical facts…and nonmedical evidence…") (internal quotations and citation omitted); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about [the plaintiff's] physical capabilities…"). The ALJ did not do so and thus the Court cannot determine whether substantial evidence supported the RFC. *See Lakisha R.*, 2023 WL 2374974, at *4.

Though the ALJ concluded that Plaintiff could perform light work that required no more than frequently reaching overhead with the right upper extremity, she also did not address the evidence from Plaintiff that he required further accommodations for his shoulder impairment (such as a more restrictive exertional level and/or reaching limitation) than the ones included in the RFC. R. 53, 59, 1508-14. Plaintiff testified that he could not reach up for a cup in a cabinet or reach down to tie his shoes. R. 59. He further stated that he would only be able to reach out in front of him to put small parts together at a job for ten minutes. *Id.* After ten minutes, Plaintiff alleged that he would have to rest for about a half an hour. R. 59-60. The ALJ did not have to accept these allegations as true, but she should have addressed them and determined whether the testimony was credible or not. *See Villano*, 556 F.3d at 563 (finding that the ALJ should have addressed testimony about symptoms related to the plaintiff's impairments). By declining to adopt the limitations Plaintiff alleged, the ALJ rejected the testimony evidence. She should have explained why she did so but instead did not even mention the testimony. *See Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *14 (N.D. Ill. May 14, 2021) ("[T]he ALJ failed to explain why he rejected the evidence, so the Court cannot trace the ALJ's reasoning."); *see also Jarnutowski*, 48 F.4th at 774 (remanding where the ALJ failed to adequately explain why she discredited the plaintiff's testimony evidence about the plaintiff's RFC and strength capabilities).

Even if the ALJ had sufficiently addressed Plaintiff's testimony, the Court does not agree with the Commissioner that the ALJ otherwise provided substantial support for the reaching and exertional limitations that supposedly accommodated Plaintiff's shoulder impairment. [Dkt. 17 at

6-7]. The ALJ did not even attempt to tie any evidence or reasoning to these limitations. Instead, she concluded that Plaintiff's shoulder impairment was accommodated for in the RFC without saying more or explaining why or how. R. 1508-14. The fact that the ALJ noted Plaintiff's allegations of shoulder pain and limited range of motion, but also noted normal exams consistent with mild imaging, does not give the Court any idea of how she determined Plaintiff's appropriate level of limitations. R. 1509-14. Why were Plaintiff's pain, limited range of motion, and testimony outweighed by normal exams and mild imaging? Did the ALJ even weigh the evidence in a meaningful way? Did she consider Plaintiff's back pain in conjunction with his shoulder pain in determining the appropriate limitations? The Court cannot tell from the limited reasoning that the ALJ supplied. "The ALJ's cursory analysis does not give us confidence that [she] had appropriate reasons for rejecting the limitations [Plaintiff] alleged." *Villano*, 556 F.3d at 563.

"Without some explanation as to why the ALJ settled on the particular limitations…in the RFC, with support from medical or non-medical evidence, the Court is unable to trace the ALJ's reasoning and accordingly cannot determine whether the ALJ's decision is supported by substantial evidence." *Lakisha R.*, 2023 WL 2374974, at *4; *see Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJs must "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and ... to enable us to trace the path of [their] reasoning.") (internal quotation marks and citation omitted). The ALJ's failure to explain how she arrived at her conclusions regarding the RFC, specifically how the exertional and reaching limitations accommodated Plaintiff's shoulder impairment, is sufficient to warrant remand. *See Jarnutowski*, 48 F.4th at 774; *Briscoe ex rel. Taylor*, 425 F.3d at 352 (7th Cir. 2005).

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [dkt. 15] is granted and the Commissioner's Motion for Summary Judgement [dkt. 17] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: March 29, 2024

BETH W. JANTZ

United States Magistrate Judge